

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **ANDRE MURRELL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. CV-09-S-2156-NE** |
| | ) | |
| **KOHLER CO., INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Plaintiff, Andre Murrell, asserts claims against his former employer, Kohler Co., Inc., under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq*. ("Title VII"), for discrimination based upon his sex.[1]  Plaintiff also asserts interference and retaliation claims in violation of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq*. ("FMLA"),[2] as well as the following supplemental state-law claims:   invasion of privacy; assault and battery; intentional

_____

[1] Doc. no. 1, ¶¶ 37-40 (Complaint, Count I).  Plaintiff did not allege a claim for retaliation for conduct protected by Title VII in his complaint.  He did, however, include a footnote, stating "It is [plaintiff's] intention to amend this Complaint to include the claim for retaliation under Title VII . . . ."  Doc. no. 1, at 3 n.1 (bracketed alteration supplied).  Plaintiff never amended his complaint. Indeed, he has filed a separate action against Kohler alleging retaliation for his reports of sexual harassment.  *See Murrell v. Kohler Co.*, No. CV 10-2056 (N.D. Ala. July 28, 2010).  The court will, therefore, not consider that claim in this action.

[2] Doc. no. 1, ¶¶ 61-74 (Complaint, Count VI and VII respectively).  Although plaintiff has labeled his claim for FMLA retaliation as "Count III," he has already alleged a state-law claim as "Count III."  Because plaintiff's retaliation claim follows his FMLA interference claim, which is labeled "Count VI," the court will conclude that plaintiff inadvertently mislabeled his retaliation claim, and that he intended to include it as "Count VII."

infliction of emotional distress and/or outrage; and negligent and/or wanton hiring, retention, training, and supervision.[3]

This case is before the court on defendant's motion for summary judgment as to all of plaintiff's claims.[4]  Upon consideration of the parties' pleadings, briefs, and evidentiary submissions, the court concludes that the motion for summary judgment is due to be granted in part and denied in part for the reasons stated herein.

## I. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[5]  In other words, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In making this determination, the court must review all evidence and make all

---

[3] Doc. no. 1, ¶¶ 41-45 (Count II), 46-50 (Count III), 51-55 (Count IV), & 56-60 (Count V).

[4] Doc. no. 20 (Defendant's Motion for Summary Judgment); *see also* doc. no. 21 (Defendant's Brief in Support of its Motion for Summary Judgment).

[5] Rule 56 was amended, effective December 1, 2010, in conjunction with a general overhaul of the Federal Rules of Civil Procedure.  The Advisory Committee was careful to note, however, that the changes "will not affect continuing development of the decisional law construing and applying these phrases." Adv. Comm. Notes to Fed. R. Civ. P. 56 (2010 Amends.).  Consequently, cases interpreting the previous version of Rule 56 are equally applicable to the revised version.

reasonable inferences in favor of the party opposing summary judgment." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)).   Inferences in favor of the non-moving party are not unqualified, however.  "[A]n inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence, but is pure conjecture and speculation."  *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1983).  Moreover,

> [t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is *material* to an issue affecting the outcome of the case.  The relevant rules of substantive law dictate the materiality of a disputed fact.  A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman*, 229 F.3d at 1023 (quoting *Haves*, 52 F.3d at 921) (emphasis supplied).  *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986) (asking "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").

## II.  SUMMARY OF FACTS[6]

---

[6] The court recites the profane language that allegedly permeated this workplace exactly as it was recited in the evidentiary materials presented by the parties, but only for the purpose of examining the social context in which it arose.  The court "does not explicate this vulgar language lightly," but only because its full consideration is essential to measure whether these words and this conduct could be read as having created "an environment that a reasonable person would find hostile or abusive." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)); *see also Reeves v. C.H. Robinson Worldwide, Inc.*, 594

Defendant, Kohler Co., Inc. ("Kohler"), produces fiberglass bathtubs and shower stalls at its manufacturing facility in Huntsville, Alabama.[7]  Plaintiff, an African-American ("black") male, worked at Kohler from 2000 to 2001, and then again from 2002 until his termination in November of 2007.[8]  While employed by Kohler, plaintiff worked primarily as a Molding Operator on "B shift," the second of four rotating twelve hour shifts.[9]  In that position, plaintiff utilized a press machine to  mold fiberglass into bathtubs and shower stalls.[10]  In addition to his work on "B Shift," plaintiff worked overtime hours on "D Shift" as often as four days a week.[11]

On an unspecified date prior to the commencement of this action, plaintiff approached Kohler management "to promote getting black supervisors in the plant."[12] After he did so, he was allegedly "called into the office and had [his] job threatened for asking about having the black supervisors."[13]  Plaintiff believes that his personnel file was negatively affected as a result of his efforts to procure a more diverse

F.3d 798, 803 (11th Cir. 2010).

[7] Defendant's evidentiary submission, Exhibit A (Deposition of Andre Murrell (hereafter referred to as "Murrell Deposition")), at 58.

[8] *Id.* at 14-15, 57.

[9] *Id.* at 58-62, 74, 77.

[10] *Id*.

[11] *Id.* at 76-77.

[12] Murrell Deposition, at 96.

[13] *Id.* at 96-97 (bracketed alteration supplied).

management team at Kohler.[14]

## A. Factual Allegations Relevant to Plaintiff's Hostile Work Environment Claim

Kohler hired Shayla Bennett ("Bennett"), a black female, as the "D shift" supervisor in November of 2005.[15]  Plaintiff first met Bennett in January of 2006, while working his overtime shift.[16]  Ms. Bennett almost immediately began using "pet names" when referring to plaintiff, such as "honey," "baby," and "cutie."[17]  She would routinely "be standing there when [plaintiff] turned around."[18]  She also habitually touched plaintiff on his back, shoulders, and arms.[19]

At approximately midnight in February or March 2006, Ms. Bennett and two females not employed by Kohler made an unannounced visit to the plant that was not related to work.[20]  Bennett approached plaintiff, "introduced her two female friends," and told plaintiff that she could teach him a few things about "making love."[21]  Ms.

---

[14] *Id.*

[15] *Id.* at 73, 75, 77; defendant's evidentiary submission, Exhibit B (Deposition of Rebecca McCutcheon (hereafter referred to as "McCutcheon Deposition")), at 19.

[16] Murrell Deposition, at 77-79.

[17] *Id.* at 84-85.

[18] *Id.* (bracketed alteration supplied).

[19] *Id.*

[20] *Id.* at 87-91; plaintiff's evidentiary submission, Exhibit A (Affidavit of Dexter Smith (hereafter referred to as "Smith Affidavit")), at 2; plaintiff's evidentiary submission, Exhibit B (Affidavit of George Butler (hereafter referred to as "Butler Affidavit")), at 1.

[21] Murrell Deposition, at 87-90.

5

Bennett also informed plaintiff that, because his "wife had four children and [Bennett] didn't have any, . . . her pussy was tighter than [his] wife's."[22]  Later that same shift, a female employee approached plaintiff and asked him to go "talk" with Bennett.[23] Plaintiff replied that he was not interested in "talking" to Bennett, that he was a married man, and that whatever Ms. Bennett wanted was "just not what [plaintiff] want[ed] to be a part of."[24]  After his shift ended, plaintiff found a note left on his vehicle that stated:  "Don't be a little boy, up the dick."[25]

Plaintiff showed the note to Dexter Smith, a co-employee and union job steward, and stated that Ms. Bennett was "at it again."[26]  Mr. Smith encouraged plaintiff to confront Bennett about her behavior, or it would be necessary to involve management.[27]  Plaintiff was hesitant to report Ms. Bennett at that time — he felt that he was "in a sticky situation because [he] was the one who pretty much tried to promote getting black supervisors [such as Bennett] in the plant."[28]  Specifically, plaintiff testified as follows:  "So it sort of would make me look kind of foolish now

---

[22] *Id.* at 89-90 (bracketed alterations supplied).

[23] *Id.* at 99-102.

[24] *Id.* at 101-102 (bracketed alterations supplied).

[25] *Id.* at 103-04.

[26] Murrell Deposition, at 91; Smith Affidavit, at 1-2.

[27] Murrell Deposition, at 104-05; Smith Affidavit, at 1-2.

[28] Murrell Deposition, at 96 (bracketed alterations supplied).

at that particular point, you know, now knocking down the only black supervisor that we had.  You know, I felt like I could handle [Ms. Bennett's advances]."[29]  Plaintiff discussed the matter with another union steward, Witt Sadderfield, and decided to forego filing an official grievance.[30]

Instead, plaintiff confronted Bennett directly.  He told her,

[L]isten, I don't want you to come back over here on my press anymore. I don't want you to come back and talk to me, I don't want you to speak to me.  If you say anything else to me that's not related to the job or whatnot, . . . we'll be going to the office.[31]

Ms. Bennett walked off as if plaintiff had said nothing, but she apparently refrained from any notable misconduct for some time.

In June of 2007, however, Bennett again approached plaintiff and told him that "she would like to suck [his] dick with her finger up [his] ass."[32]   That same month, Ms. Bennett said to plaintiff that "she would like to suck the skin off of [his] dick."[33] On August 9, 2007, Bennett — as somewhat corroborated by security camera footage — "felt up" plaintiff's "backside" and "rubbed" her groin against him.[34]

Plaintiff reported Ms. Bennett's alleged comments and behavior to Kohler

[29] *Id.* at 97 (bracketed alteration supplied).

[30] *Id.* at 107-08.

[31] *Id.* at 106 (bracketed alteration supplied)..

[32] *Id.* at 148-49 (bracketed alterations supplied).

[33] Murrell Deposition, at 152-53 (bracketed alteration supplied).

[34] *Id.* at 160-61, 167-69, 171-72; Murrell Deposition, Exhibits 8-9.

management.  The union also filed a grievance on plaintiff's behalf in August of

2007.[35]  Upon learning of plaintiff's complaints, Bennett said to him on August 16,

2007:  "I don't give a damn how many grievances you file, I'm the power you little

dick motherfucker."[36]

On August 22, 2007, the union filed two additional grievances on plaintiff's

behalf, one related to the August 16, 2007 comment, and one more generally alleging

"sexual advances" by Bennett.[37]

Plaintiff filed a charge with the Equal Employment Opportunity Commission

("EEOC"), alleging sexual harassment on October  9, 2007.[38]   The EEOC issued a

determination in favor of plaintiff, finding that there was "reasonable cause to

believe" that Ms. Bennett subjected plaintiff to "inappropriate stares, sexual

comments, and unwanted touching which occurred almost daily."[39]  The parties were

unable to reach an agreement, however.  A Notice of Right to Sue Letter was mailed

to plaintiff on September 22, 2009.[40]

**B.     Factual Allegations Relevant to Plaintiff's Claims Under the Family and
         Medical Leave Act**

---

[35] Murrell Deposition, at 176-80; *id* at Exhibit 10.

[36] Murrell Deposition, at 182-88.

[37] *Id.* at 183-84; *see also id.* at Exhibits 11-12.

[38] Doc. no. 1, ¶ 8 & Exhibit 1.

[39] Doc. no. 1, Exhibit 3.

[40] *Id.*

On November 9, 2007, plaintiff spoke with Rebecca McCutcheon, the Manager of Kohler's Human Resources Department, in order to pick up the company's standard FMLA medical certification forms.[41]   Plaintiff sought FMLA leave for foot surgery, which he had scheduled for November 13, 2007.[42]   Pursuant to its FMLA policy, Kohler required employees to submit a medical certification within fifteen days of a request for FMLA leave, or such leave was subject to denial.[43]   Ms. McCutcheon informed plaintiff of this policy, and he acknowledged that he understood that a medical certification needed to be submitted to Kohler within fifteen days of November 9, 2007.[44]

Plaintiff worked on November 10, and never returned.[45]   He did not submit a medical certification until November 29, 2007, twenty days after he requested FMLA leave.[46]   Kohler had a "No Call" policy in place, which required employees to report an unscheduled absence thirty minutes before their shift started.[47]   After repeated violations of that policy, Kohler, on November 21, 2007, terminated plaintiff's

---

[41] Murrell Deposition, at 228-29, 251-52.

[42] *Id.*

[43] *Id.* at 70-72; *see also id.* at Exhibits 5-6.

[44] Murrell Deposition, at 228-29; McCutcheon Deposition, at 52.

[45] Murrell Deposition, at 225-26.

[46] *Id.* at 230-31; McCutcheon Deposition, at 52; *see also* Murrell Deposition, Exhibit 15.

[47] Murrell Deposition, at 223-24; McCutcheon Deposition, at 53-54; *see also* Murrell Deposition, Exhibit 6.

employment, considering his failure to timely report his absences to be "job abandonment."[48]  Plaintiff finally contacted Kohler on December 3, 2007, and learned that his employment had been terminated.[49]

Plaintiff was not cleared to work by his doctor until January 29, 2008.[50]  Even after that date, he admittedly was physically unable to perform his prior job at Kohler.[51]   In February of 2008, Plaintiff worked for two weeks packing boxes, a job less strenuous than operating a press machine.[52]  Even so, plaintiff was forced to quit because he was physically unable to carry out his duties.[53]

Plaintiff has been disabled and completely unable to work since he had knee replacement surgery in July of 2008, the same month he filed for Social Security disability benefits, which he currently receives.[54]

## III.  DISCUSSION

### A.    Plaintiff's Hostile Work Environment Claim

Title VII makes it "an unlawful employment practice for an employer to fail

---

[48] Murrell Deposition, at 223-24; *id* at Exhibits 6 & 16.

[49] Murrell Deposition, at 234-36; McCutcheon Deposition, at 68-70.

[50] Murrell Deposition, at 267-70; *id.* at Exhibit 20.

[51] Murrell Deposition, at 270-71.

[52] *Id.* at 44-47, 270-71.

[53] *Id.*

[54] *Id.* at 50-52; *id.* at Exhibit 20.

or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of [among other characteristics] such individual's . . . sex . . . ."  42 U.S.C. § 2000e-2(a)(1).  That statutory language does not mention the term "sexual harassment."  Even so, the Supreme Court long ago held in *Meritor Savings Bank, FSB v. Vinson*,   477 U.S. 57 (1986), that "unwelcome sexual advances that create an offensive or hostile working environment violate Title VII.  Without question, when a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor 'discriminate[s]' on the basis of sex."  *Id.* at 64 (citation omitted) (bracketed alteration in original).

A plaintiff desiring to establish a hostile work environment sexual harassment claim under Title VII must show that:  (1) he or she belongs to a protected group; (2) he or she was subjected to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) the harassment was based upon the plaintiff's sex; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) there is a basis for holding the employer responsible under a theory of either vicarious or direct liability.  *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999) (*en banc*).  *See also*, *e.g.*,

11

*Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1257 (11th Cir. 2003); *Johnson v. Booker T. Washington Broadcasting Service, Inc.*, 234 F.3d 501, 508 (11th Cir. 2000); *Cross v. State of Alabama*, 49 F.3d 1490, 1504 (11th Cir. 1995); *Bell v. Crackin Good Bakers, Inc.*, 777 F.2d 1497, 1502-03 (11th Cir. 1985); *Henson v. City of Dundee*, 682 F.2d 897, 903-05 (11th Cir. 1982).

Upon review of the record and the parties' briefs, the court has little difficulty in summarily concluding that plaintiff has offered sufficient evidence to establish a *prima facie* case of hostile work environment. The harassment alleged, if proven true, was severe, pervasive, and extraordinarily offensive. Accordingly, Kohler's motion for summary judgment on that claim is due to be denied.

**B.    Plaintiff's Claims Under the Family and Medical Leave Act**

**1.    Plaintiff's FMLA interference claim**

To establish a claim for FMLA interference, "an employee must demonstrate that he was denied a benefit to which he was entitled under the FMLA." *Martin v. Brevard County Public Schools*, 543 F.3d 1261, 1267 (11th Cir. 2008) (citing 29 U.S.C. § 2615(a)(1); *Strickland v. Water Works & Sewer Board of Birmingham*, 239 F.3d 1199, 1206-07 (11th Cir. 2001)). Pursuant to the FMLA, but subject to the certification requirements of 29 U.S.C. § 2613, "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for [among other

reasons] . . . . a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1) (bracketed alterations supplied).

However, employers "may require that a request for leave . . . be supported by a certification issued by the health care provider of the eligible employee." 29 U.S.C. § 2613(a); *See also Cash v. Smith*, 231 F.3d 1301, 1307 (11th Cir. 2000) (noting that "employers have a statutory right to require an employee requesting FMLA leave to obtain certification that attests to the employee's eligibility for such leave from a health care provider"). Such a certification is sufficient if it states: "(1) the date on which the serious health condition commenced; (2) the probable duration of the condition; (3) the appropriate medical facts within the knowledge of the health care provider regarding the condition;" and (4) "a statement that the employee is unable to perform the functions of the position of the employee." 29 U.S.C. § 2613(b). The Department of Labor regulations interpreting the relevant statutes provide that, when an employee fails to submit a required medical certification in conjunction with foreseeable leave, the employer may deny FMLA leave for the entire period during which the certification is overdue. 29 C.F.R. § 825.313(a) ("For example, if an employee has 15 days to provide a certification and does not provide the certification for 45 days . . .  the employer can deny FMLA protections for the 30-day period

13

following the expiration of the 15-day time period, if the employee takes leave during such period."); *see also id.* § 825.313(b) (providing in the context of unforeseeable leave, "[i]f the employee never produces the certification, the leave is not FMLA leave").

Kohler's established FMLA policy required employees to submit a medical certification within fifteen days of a request for FMLA leave, or such leave was subject to denial.[55] On November 9, 2007, plaintiff visited Rebecca McCutcheon, the Director of Kohler's Human Resources Department, and obtained the company's standard FMLA medical certification forms.[56] At that time, plaintiff informed Ms. McCutcheon that he would need FMLA approval for a foot surgery, which he had scheduled for November 13, 2007.[57] McCutcheon informed plaintiff that, in order for his leave to be approved, he would need to return the medical certification within fifteen days.[58] Plaintiff does not dispute that conversation, nor does he contend that he misunderstood Ms. McCutcheon's directive or Kohler's FMLA policy.[59] Indeed, plaintiff had previously requested and been approved for FMLA leave for an

---

[55] Murrell Deposition, at Exhibit 6.

[56] Murrell Deposition, at 228-29; McCutcheon Deposition, at 50-51.

[57] Murrell Deposition, at 228-29, 251-52.

[58] *Id.*; McCutcheon Deposition, at 50-51.

[59] Murrell Deposition, at 228-29; McCutcheon Deposition, at 50-51.

unrelated issue in the Spring of 2007.[60]

Plaintiff worked the following day, and never returned.[61]  It was not until November 29, 2007 that plaintiff submitted the required medical certification.[62]  As Kohler notes, this was "20 days after Plaintiff received the paperwork, 19 days after his last day of work, [and] 16 days after his surgery . . . ."[63]  Thus, plaintiff violated the company's lawful policy, *see* 29 U.S.C. § 2613(a), by failing to timely submit a medical certification in conjunction with his request for FMLA leave.  Kohler management had no knowledge of plaintiff's FMLA request.[64]  After repeated violations of the company's "No Call" policy, which required employees to report an absence thirty minutes before their shift started, Kohler terminated plaintiff's employment for "job abandonment."[65]

In *Baldwin-Love v. Electronic Data Systems, Inc*., 307 F. Supp. 2d 1222 (M.D. Ala. 2004), the district court concluded that, where an employee failed to provide certification for her absences, even after having been given an extension of time in which to do so, she did not avail herself of the protections of the FMLA, and

---

[60] *E.g.*, Murrell Deposition, at 258.

[61] *Id.* at 225-26.

[62] Murrell Deposition, at 230-31; *id.* at Exhibit 15; McCutcheon Deposition, at 52.

[63] Doc. no. 21, at 7 (bracketed alteration supplied).

[64] McCutcheon Deposition, at 60-65.

[65] Murrell Deposition, at 223-24; McCutcheon Deposition, at 53-54.

summary judgment was due to be granted in favor of the employer. *Id.* at 1235. Moreover, in *Young v. Russell Corp.*, No. 2:08CV148-WHA, 2008 WL 5412782 (M.D. Ala. Dec. 29, 2008), the court considered a set of facts nearly identical to those in the present action. *Id.* at *1. In *Young*, the plaintiff requested FMLA leave in conjunction with an asthma attack. *Id.* Her employer, pursuant to its FMLA policy, notified her that she had fifteen days to present a medical certification in order for her leave to be FMLA-approved. *Id.* The plaintiff did submit the certification, but it was two weeks late. *Id.* Her employment was terminated, pursuant to the company's policy, after several unexcused absences. *Id.* Based upon those facts, the *Young* court granted summary judgment to the employer on the grounds that the plaintiff's failure to timely return her medical certification deprived her of any entitlement to FMLA leave. *Id.* at *5 (citing 29 C.F.R. § 825.311). *See also Cash*, 231 F.3d at 1307 (affirming summary judgment where the employee failed to present evidence that she exercised or availed herself of a protected right under the FMLA because she did not provide the requested certification).

The court finds the above-mentioned cases to be persuasive. Plaintiff failed to timely submit a medical certification, and he was, therefore, not entitled to FMLA leave at the time of his termination for job abandonment. He cannot be denied a benefit to which he was not entitled. Thus, he cannot prevail on his FMLA

16

interference claim.  *See*, *e.g.*, *Martin*, 543 F.3d at 1267.  Accordingly, summary judgment is due to be granted with respect to that claim.

### 2.    Plaintiff's FMLA retaliation claim

At the summary judgment stage, plaintiff has effectively abandoned his claim for FMLA retaliation.  Plaintiff offered no genuine response to Kohler's well-supported arguments that summary judgment should be granted on that claim. Kohler argued, thoroughly, and with ample citation to legal authority, that plaintiff cannot establish a *prima facie* case of FMLA retaliation, that Kohler had a legitimate, non-retaliatory reason for its action, and that plaintiff cannot establish pretext to rebut those reasons.[66]  Plaintiff offers four sentences — only three of which are coherent — purportedly in response to Kohler's brief.[67]  In doing so, he fails to even set forth the elements of a retaliation claim.  Moreover, plaintiff omits any discussion of Kohler's proffered non-retaliatory reason for its action.  Indeed, plaintiff so blatantly ignores the arguments raised in Kohler's brief that the court questions whether he bothered to read it.

It is not the place of this court to step into the shoes of a litigant on summary judgment and formulate arguments.  In that regard, the undersigned expressly

---

[66] *See* doc. no. 21, at 24-28; doc. no. 29, at 8-9.

[67] *See* doc. no. 26, at 25-26 ("Mr. Murrell's termination most extreme [sic] adverse employment action.").

17

"decline[s] to assume the role of counsel" and make plaintiff's arguments for him. *United States v. Docampo*, 573 F.3d 1091, 1103 (11th Cir. 2009) (bracketed alteration supplied); *see also Pinto v. Universidad De Puerto Rico*, 895 F.2d 18, 19 (1st Cir. 1990) (noting that "the court is under no duty to exercise imagination and conjure what a plaintiff might have alleged, but did not, and do counsel's work for him or her"); *Fisher v. Ciba Specialty Chemicals Corp.*, 238 F.R.D. 273, 299 n.57 (S.D. Ala. 2006) (where parties have not articulated a theory for liability, "the Court will not formulate their arguments for them"); *LaBauve v. Olin Corp.*, 231 F.R.D. 632, 642 (S.D. Ala. 2005) (finding that "there is no burden upon the district court to distill every potential argument that could be made based upon the materials before it") (quotation and bracketed alteration omitted).

Moreover, it is "by now well settled in this Circuit that a legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed." *Access Now, Inc. v. Southwest Airlines Co*, 385 F.3d 1324, 1330 (11th Cir. 2004); *see also*, *e.g.*, *Millennium Partners, L.P. v. Colmar Storage, L.L.C.*, 494 F.3d 1293, 1298 (11th Cir. 2007) (finding an argument not challenged in a party's brief "forfeited"); *SunAmerica Corp. v. Sun Life Assurance Co.*, 77 F.3d 1325, 1333 (11th Cir. 1996) ("As this Court has held repeatedly, '[a]n argument not made is waived.'") (alterations in original) (quoting *Continental*

*Technical Services. v. Rockwell International Corp.*, 927 F.2d 1198, 1199 (11th Cir. 1991)).

Accordingly, the court finds plaintiff's FMLA retaliation claim abandoned. Summary judgment is, therefore, due to be granted on that claim.

## C.  Plaintiff's State-Law Claims

Plaintiff asserts the following state-law claims against Kohler:  invasion of privacy; assault and battery; intentional infliction of emotional distress and/or outrage; and negligent and/or wanton hiring, retention, training, and supervision. Kohler asserts that all of plaintiff's state-law claims are barred by the statute of limitations.[68]  In response, plaintiff recites the requirement in Federal Rule of Civil Procedure 8(c) that affirmative defenses must be pled, and claims that "*the defendant has failed to plead* the affirmative defense of statute of limitations and has thereby waived the same."[69]  Again, the court suspects, with good reason, that plaintiff failed to read the document upon which he bases his argument.  The untruth of plaintiff's assertions could not be more plain.  Kohler claimed in its answer that "plaintiff's claims, in whole or in part, are barred by the applicable statutes of limitations."[70]  It is difficult to conceive how plaintiff overlooked that defense, as it was *the second*

---

[68] *E.g.*, doc. no. 21, at 28-29.

[69] Doc. no. 26, at 26 (emphasis supplied).

[70] Doc. no. 6 (Defendant's Answer), at 6.

*defense listed* under the affirmative defenses section of Kohler's answer.

Moreover, not only did Kohler properly plead and preserve its defense, but plaintiff's state-law claims are in fact barred by the applicable statute of limitations. Because every state-law claim alleged by plaintiff is based upon Ms. Bennett's conduct, the latest that the limitations period *could possibly* have begun was the date of his last contact with Bennett, which occurred on August 16, 2007.[71]

In determining the statutes of limitations that apply to plaintiff's supplemental state-law claims, the court must look to Alabama law.  *See, e.g., Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1274-75 (11th Cir. 2004) (noting in action where jurisdiction was premised upon federal question that the court was "*Erie*-bound to apply [state] law in evaluating plaintiffs' supplemental state-law claims") (bracketed alteration supplied); *Tillman v. Georgia*, 466 F. Supp. 2d 1311, 1317 (N.D. Ga. 2006) (applying state's statute of limitations law to state-law claims when underlying basis for jurisdiction was federal question).  *See also Jinks v. Richland County, South Carolina*, 538 U.S. 456, 465 (2003) (finding that statutes of limitations are considered substantive laws and, therefore, must be followed by federal courts).

---

[71] Murrell Deposition, at 193 ("Q:  And more specific, did you ever see her again after the morning of August 16, 2007?  A:  No, I didn't.").

Under Alabama Code §§ 6-2-38(*l*), (n),[72] the statutes of limitations for all of plaintiff's supplemental claims are two years.[73]  Plaintiff filed this suit on October 23, 2009, more than two years after his last contact with Ms. Bennett.  While the law may afford grounds upon which the limitations period could be tolled, plaintiff has presented no such argument to the court — nor has he presented any argument other than the blatantly incorrect assertion that Kohler did not plead statute of limitations as an affirmative defense.

---

[72] That statute is entitled "Commencement of actions — Two years," and states, in pertinent part:

(*l*)    All actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years.

. . . .

(n)    All actions commenced to recover damages for injury to the person or property of another *wherein a principal or master is sought to be held liable for the act or conduct of his agent, servant, or employee* under the doctrine of respondeat superior must be brought within two years.

Ala. Code § 6-2-38 (emphasis supplied).

[73] Caselaw has specifically flushed out that each state-law claim asserted by plaintiff in this action is governed by the two year limitation set forth in § 6-2-38.  *See Burroughs v. Smurfit Stone Container Corp.*, LP, 506 F. Supp. 2d 1002, 1021 (S.D. Ala. 2007) (granting summary judgment to employer based on two-year statute of limitations for *assault and battery* claim premised on actions of co-employee); *Rester v. McWane, Inc.*, 962 So. 2d 183, 186 (Ala. 2007) (applying two-year statute of limitations to *tort of outrage and intentional infliction of emotional distress*); *Travis v. Ziter*, 681 So. 2d 1348, 1350-51 (Ala. 1996) (affirming judgment for defendants on *negligent hiring and supervision* and outrage claims based on two-year statute of limitations); *Pritchett v. Figi's Inc.*, No. 09-0370-WS-M, 2009 U.S. Dist. LEXIS 120327, at *2 (S.D. Ala. Dec. 28, 2009) (applying two-year statute of limitations to invasion of privacy claim).

21

The undisputed record shows that any actionable conduct by Shayla Bennett occurred more than two years before plaintiff filed this suit.  Accordingly, plaintiff's state-law claims are time-barred, and summary judgment is due to be granted on all of those claims.

## IV. CONCLUSION

As appropriate order, consistent with the foregoing memorandum opinion, will be entered contemporaneously herewith.

DONE this 11th day of February, 2011.

_____
United States District Judge